**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MELANA S. ROBINSON, | ) No. SACV 06-01118 (SS) |
| Plaintiff, | ) |
| | ) **MEMORANDUM DECISION AND ORDER** |
| v. | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| Defendant. | ) |

Plaintiff Melana S. Robinson ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner," or the "Agency") denying her application for Disability Insurance Benefits and Supplemental Security Income. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. This matter is before the Court on the parties' Joint Stipulation ("Jt. Stip.") filed on August 16, 2007. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

\\

\\

**PROCEDURAL HISTORY**

Plaintiff filed an application for disability benefits on February 7, 2002. (Administrative Record ("AR") 31, 95). Plaintiff alleged that she is disabled because she has a "fractured spine." (AR 140). Plaintiff notes that her disability onset date was January 20, 2002. (AR 140).

The Agency denied Plaintiff's claims for benefits initially and upon reconsideration. (See AR 81-84). On July 8, 2003, Administrative Law Judge ("ALJ") Daniel Heely conducted a hearing reviewing Plaintiff's claims. (AR 723-30). Plaintiff, who was represented by an attorney, was not present and did not testify. (AR 725). ALJ Heely denied benefits on August 22, 2003. (AR 58-65). Plaintiff sought review of the ALJ's decision before the Appeals Council. On May 24, 2004, the Appeals Council vacated the August 22, 2003 decision and remanded the matter for further proceedings. (AR 91-93).

On January 27, 2005, ALJ Steven Chaffin conducted a hearing reviewing Plaintiff's claims. (AR 731-801). Plaintiff, who was represented by an attorney, testified. (See AR 734). Vocational Expert ("VE") Alan Boraskin also testified at the hearing. (AR 786). On April 21, 2006, ALJ Chaffin denied benefits. Plaintiff sought review of the ALJ's decision before the Appeals Council. On September 27, 2006, the Appeals Council denied review of the decision. (AR 6-9). Plaintiff commenced the instant action on November 11, 2006.

\\

\\

**FACTUAL BACKGROUND**

Plaintiff was born on May 9, 1955 and was forty-nine years old at the time of the 2005 hearing. (<u>See</u> AR 95, 732). She has completed high school and two years of college. (AR 735). Plaintiff has a history of substance abuse including cocaine, amphetamines, marijuana, and prescription pain medication. (<u>See</u> AR 773-86). She also reports that she was previously incarcerated for felony shoplifting and several petty thefts. (AR 98, 424). Plaintiff has previous work experience as a waitress, restaurant manager, crafts teacher, babysitter, and housekeeper. (AR 141, 736-37).

**A.   <u>Plaintiff's Activities</u>**

At the time of the hearing, Plaintiff was employed doing child care for children ages eight and ten years old. (AR 742). In 2003, she was babysitting for three year old triplets. (AR 743). Plaintiff reported that she manages her own transportation, handles her own funds and takes care of her own grooming and hygiene. (AR 424). Plaintiff also noted that she performs light household chores (AR 119), reads, watches television, and listens to the radio. (AR 424).

**B.   <u>Relevant Medical History</u>**

In January 2002, she was examined at Fountain Valley Regional Hospital and Medical Center. (AR 260). The examination revealed pain and spasms involving the paraspinal muscles of the dorsal lumbar spine. (<u>Id.</u>). X-rays indicated a fracture of the anterior margin of T-12.

(<u>Id.</u>).   Plaintiff also complained of hip pain.   (<u>Id.</u>).   She was hospitalized to control her pain and discharged four days later.   (<u>Id.</u>). X-rays of Plaintiff's hips were normal.   (<u>Id.</u>).

In February 2002, Plaintiff underwent knee surgery.   (AR 179-80). In May 2002, Plaintiff underwent arthoscopy and mini arthotomy acromioplasty to the right shoulder.   (AR 226-27).   In August 2002, Plaintiff had a open reduction and internal fixation of displaced lateral malleolar fracture, left ankle.   (AR 161-62).

On November 1, 2002, Dr. J. Pierce Conaty conducted an Orthopaedic Consultation of Plaintiff.   (AR 417-21).   Dr. Conaty assessed that Plaintiff could only lift and carry twenty pounds occasionally and ten pounds frequently. (AR 421).   He found that Plaintiff could walk for up to two hours in an eight-hour workday and sit for six hours in an eight-hour workday.   (<u>Id.</u>).   Dr. Connaty opined that Plaintiff would have difficulty walking on uneven terrain and that it would be appropriate that she periodically alternate sitting and standing for short periods of time.   (<u>Id.</u>).   He also observed that Plaintiff should be limit climbing, kneeling, and crouching to one-third of the workday, reaching in all directions should be limited, and that Plaintiff has no gross or fine manipulation problems.   (<u>Id.</u>).

In March 2003, Dr. Nicholas C. Yaru examined Plaintiff and observed full range of motion in the neck and shoulder, that x-rays of Plaintiff's lumbar spine show some minimal degenerative changes, and that x-rays of her shoulders were normal.   (AR 510).   Dr. Yaru advised that Plaintiff participate in physical therapy.   (AR 511).

4

In May 2003, Plaintiff had a diagnostic arthoscopy and partial lateral meniscectomy of her right knee. (AR 525). In June 2003, Plaintiff had a diagnostic and operative arthroscopy of her left knee. (AR 527). A MRI of the right knee obtained in August 2003 revealed either a bucket handle tearing of the lateral meniscus or scarring from previous procedures. (AR 522).

## C.  **Mental Health History**

In June 2002, Dr. Kathleen Farinacci completed a "Mental Assessment" check-off form. (AR 409-14). Dr. Farinacci reported that Plaintiff had no "severe" functional limitations due to her mental impairments. (Id.). She noted that Plaintiff had "moderately severe" functional limitations in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods of time, work in coordination within a proximity to others without being distracted by them, complete a normal work-day and work-week without interruptions from psychologically based symptoms, accept instructions and respond appropriately to criticism, get along with co-workers or peers, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. (Id.). She found that Plaintiff had moderate functional limitations in her ability to remember locations and work-like procedures, perform activities within a schedule, maintain regular attendance, be punctual, sustain an ordinary routine without special supervision, interact appropriately with the public, ask simple questions or request assistance, maintain socially appropriate behavior, adhere to basic standards of neatness and

cleanliness, and be aware of normal hazards and take precautions. (Id.).  Dr. Farinacci determined that Plaintiff has attention deficit disorder and major depression.  (AR 413).  Plaintiff did not inform Dr. Farinacci of her prior drug and alcohol abuse.  (See id.).

On November 2, 2002, Dr. Sohini P. Parikh conducted a Complete Psychiatric Evaluation of Plaintiff.  (AR 422-27).  Dr. Parikh diagnosed Plaintiff with major depressive disorder, moderate, and anxiety disorder, not otherwise specified.  (AR 426).  She also found that Plaintiff had a Global Assessment of Functioning ("GAF") score of fifty-five to sixty.  (AR 427).[1]  Dr. Parikh assessed that Plaintiff "might have some impairment in the ability to reason and make social, occupation, and personal adjustments because of her depression." (Id.). She also determined that Plaintiff "is able to understand, carryout [sic], and remember simple instructions. [Plaintiff] can follow complex instructions."  (Id.).  Dr. Parikh did not believe that Plaintiff could interact appropriately with co-workers but noted that Plaintiff should be able to respond appropriately to the usual work settings and adjust to changes in the work routine.  (Id.).

---

[1]   A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning.  It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations.   See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 2000) (hereafter, "DSM IV").

A rating of fifty-one to sixty on the GAF scale indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  See DSM IV, at 34.

On September 27, 2004, Dr. Charlene K. Krieg conducted a Psychological Evaluation of Plaintiff. (AR 500-06). Dr. Krieg diagnosed Plaintiff with depressive disorder, not otherwise specified, anxiety disorder, not otherwise specified, alcohol abuse, in remission for three years, cocaine abuse, in remission for four years, cannabis abuse, in remission for fifteen years, and amphetamine abuse. (AR 505). Dr. Krieg observed that Plaintiff "is capable of understanding clear instructions, following simple directions, and completing tasks." (Id.). She also found that Plaintiff was "able to sustain performance on detailed and complex tasks." (Id.). Dr. Krieg noted that Plaintiff appeared to be able to accept instructions from supervisors, interact with co-workers and the public, and maintain regular attendance in the workplace. (AR 505-06). Dr. Krieg assessed that Plaintiff could deal with the usual stress that may be encountered in a competitive work environment, could adjust to changes, and that she would not create a hazard in the workplace. (AR 506).

**D.   Post-Hearing Evidence**

After the most recent hearing, Plaintiff submitted progress notes and a "Mental Assessment" check-off form completed by Dr. Marry Stoller. The progress notes ranged from December 27, 2002 through February 16, 2005. (AR 568-92). The "Mental Assessment" check-off report was completed on February 11, 2005. (AR 594-98). In her check-off report, Dr. Stoller did not find that Plaintiff had any severe functional impairments. (See id). She noted, however, that Plaintiff had moderate limitations in her ability to carry out detailed instructions, maintain attention and concentration for extended periods of time, perform

7

activities within a schedule, maintain regular attendance, be punctual, sustain an ordinary routine without special supervision, work in coordination within a proximity to others without being distracted, complete a normal work-day and work-week without interruptions from psychologically based symptoms, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with co-workers and peers.  (<u>See id.</u>).

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[2] and that is expected to result in death or to last for a continuous period of at least twelve months.  <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).   The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.   The steps are:

---

[2]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)   Is the claimant's impairment severe?   If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?   If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the

9

claimant's residual functional capacity ("RFC"),[3] age, education, and work experience.  <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000).

**THE ALJ'S DECISION**

In the decision, the ALJ employed the five-step sequential evaluation process discussed above.  At the first step, the ALJ observed that Plaintiff had engaged substantial gainful activity since the alleged onset date of her disability.  (AR 23).  The ALJ found that Petitioner's full-time work as a housekeeper and child care provider where she earned approximately $2,000 a month was substantial gainful activity.  (<u>Id.</u>).  The ALJ nonetheless continued with the sequential evaluation and determined that Plaintiff's post cervical fusion with chronic pain, T12 fracture, right shoulder impingement syndrome, bursitis, AC joint arthritis, status post acromioplasty excision distal clavicle, bilateral carpal tunnel syndrome with status post surgery, healed fracture of the left femur, fracture of the right ankle with

---

[3]   Residual functional capacity is "what [one] can still do despite [his] limitations" and represents an "assessment based upon all of the relevant evidence."  20 C.F.R. §§ 404.1545(a), 416.945(a).

status post open reduction and internal fixation, colles fracture of the left wrist, status post bilateral knee arthoscopy, depression, anxiety and a history of substance abuse are "severe" impairments.  (AR 29-30). At the third step, however, the ALJ observed that Plaintiff's impairments did not meet or equal any of the impairments appearing in the "Listing of Impairments" set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 30).

In the fourth step of his analysis, the ALJ concluded that Plaintiff had the RFC to perform a significant range of sedentary work. (AR 30).  The ALJ determined, however, that Plaintiff was not capable of performing her past relevant work.  (Id.).

At step five, the ALJ determined that Plaintiff could preform a significant number of jobs in the national and local economy.  (AR 30). Accordingly, the ALJ found that Plaintiff was not disabled.  (AR 31).

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v.  Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001)(citing Tackett, 180 F.3d at 1097); Smolen v.  Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).
\\
\\

"Substantial evidence is more than a scintilla, but less than a preponderance." <u>Reddick</u>, 157 F.3d at 720 (citing <u>Jamerson v. Chater</u>, 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." <u>Id.</u> (citing <u>Jamerson</u>, 112 F.3d at 1066; <u>Smolen</u>, 80 F.3d at 1279).  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" <u>Aukland</u>, 257 F.3d at 1035 (citing <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. <u>Reddick</u>, 157 F.3d at 720-21 (citing <u>Flaten v. Sec'y</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## DISCUSSION

Plaintiff argues that the ALJ's decision should be overturned for three reasons.  First, Plaintiff alleges that the ALJ did not properly consider the post-hearing evidence submitted including specifically a "Mental Assessment" form completed by Dr. Stoller, a treating doctor. (Jt. Stip. at 2-4).  Second, Plaintiff asserts that the ALJ did not properly consider the opinion of Dr. Farinacci.  (Jt. Stip. at 9-11). Finally, Plaintiff argues that the new evidence submitted to the Appeals Council warranted remand for further consideration.  (Jt. Stip. At 16-17).  The Court disagrees with Plaintiff's contentions.

\\

\\

\\

12

**A.** **Plaintiff's Claims That The ALJ/Appeals Council Did Not Properly Consider Post-Hearing Evidence Does Not Warrant Remand**

Plaintiff contends that the ALJ failed to properly consider the "Mental Assessment" check-off report from Dr. Stoller, a treating physician, submitted to the ALJ after the hearing. (Jt. Stip. at 2-4). She also asserts that the Appeals Council failed to properly consider evidence of Plaintiff's medical treatment in 2005 and 2006. (Jt. Stip. at 16-17). Plaintiff's claims lack merit.

**1. Dr. Stoller's Opinions**

Plaintiff argues that remand is warranted because the ALJ was obligated to consider Dr. Stoller's progress notes and "Mental Assessment" check-off report as it was submitted to the ALJ prior to the his decision. (Jt. Stip. at 2-4). The Court disagrees.

Although a treating physician's opinion is entitled to great deference, it is "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). If the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "Even when the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by

substantial evidence in the record." Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007) (quoting Reddick, 157 F.3d at 725).  The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence.  See Magallanes v. Bowen, 881 F.2d 747, 751, 753-55 (9th Cir. 1989) (noting that the court may draw inferences from the ALJ's discussion of the evidence in the record that reveal his rationale).

When applicable, the Appeals Council shall evaluate the entire record, including new relevant evidence.  Ramirez v. Shalala, 8 F.3d 1449, 1451-52 (9th Cir. 1993) (where the plaintiff submits evidence after the ALJ's decision and the Appeals Council specifically considers that evidence, "we consider the ruling of both the ALJ and the Appeals Council," and the record for review includes the new evidence); see also 20 C.F.R. §§ 404.970(b) & 416.1470(b).

The post-hearing evidence was not evaluated by the ALJ.  The Appeals Council, however, reviewed Dr. Stoller's progress notes and "Mental Assessment" check-off report.  (AR 7).  The Appeal Council ruled as follows:

> We found that this information does not provide a basis for changing the Administrative Law Judge's decision.  A GAF score is generally too vague to serve as a specific residual functional capacity assessment and may include socioeconomic factors that are not pertinent to a disability determination. Dr. Stoller's assessment which includes moderate limitations defined as affecting but not precluding functioning is not

specifically inconsistent with the assessment of a severe mental impairment found in the decision. The treatment records also include additional notations of work activity including work as a telemarketer and work as a nanny.

(AR 7).

The Court agrees that Dr. Stoller's opinions are consistent with the ALJ's findings. In her check-off report, Dr. Stoller did not find that Plaintiff had any severe functional impairments. (See AR 594-98). She noted, however, that Plaintiff had moderate limitations (i.e., "An impairment which affects but does not preclude ability to function." (AR 594)) in her ability to carry out detailed instructions, maintain attention and concentration for extended periods of time, perform activities within a schedule, maintain regular attendance, be punctual, sustain an ordinary routine without special supervision, work in coordination within a proximity to others without being distracted, complete a normal work-day and work-week without interruptions from psychologically based symptoms, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with co-workers and peers. (AR 594-98).

In her progress notes, Dr. Stoller noted that Plaintiff's condition was improving. Specifically, in 2003, Dr. Stoller observed that Plaintiff denied being depressed or suffering from mood swings (AR 575, 576, 577, 578), and that Plaintiff was starting a job as a deck hand. (AR 577). In 2004, Plaintiff reported occasional panic attacks and depressed mood (AR 584-90) but also reported that she had been able to

15

control her symptoms.  (AR 590).  During her only visit to the doctor in 2005, Plaintiff reported being depressed and recently being fired from her job.  (AR 592).

The ALJ's assessment of Plaintiff's mental RFC is as follows:

> [Plaintiff] may have some impairment in the ability to reason and make social, occupational and personal adjustments because of depression.  She is able to understand, carryout and remember simple instructions and follow complex instructions. She could not interact with coworkers but should be able to respond appropriately to usual work settings in matters such as attendance and would not have a hard time adjusting to changes in the work routing.

(AR 24).  The ALJ's mental RFC assessment is consistent with Dr. Stoller's observations and opinions.  As such, the Appeals Council's determination that Dr. Stoller's progress notes and "Mental Assessment" check-off report were not inconsistent with the ALJ's ultimate functional capacity finding was a reasonable interpretation of the evidence.  See Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (finding that the Commissioner's reasonable interpretation of the evidence should be upheld).  Accordingly, Petitioner's claim does not warrant remand.

\\
\\
\\
\\

### 2.   Other Post-Hearing Medical Evidence

Plaintiff contends that the evidence submitted to the Appeals Council regarding treatment she underwent in 2005 and 2006 was probative of her disability during the period before the ALJ's decision. (Jt. Stip. at 16). Plaintiff asserts that the Appeals Council erred by refusing to consider this evidence. (Id.). The Court disagrees.

Plaintiff submitted medical records documenting a left shoulder decompression and rotator cuff reconstruction surgery on June 29, 2005 (AR 696-97), ankle surgery to remove a plate on June 14, 2005 (AR 691), and a cervical MRI showing an annular tear on June 20, 2005. (AR 692-93). Plaintiff also provided a short letter dated September 12, 2005 from Dr. Munazza Khan indicating that Plaintiff was permanently disabled (AR 689), a declaration that she was fired from her employment shortly after the hearing dated May 9, 2005, (AR 674), and a declaration from Geraldine Smith regarding her observations of Plaintiff's limitations executed February 8, 2005. (AR 678).

The Appeals Council rejected this evidence. It determined that the ALJ "decided [Plaintiff's] case through April 21, 2005. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before April 21, 2005." (AR 7). The Appeals Council also advised Plaintiff that if she wanted the Agency to consider the new evidence, she needed to re-apply for benefits. (Id.).

17

Plaintiff argues that the medical evidence submitted to the Appeals Council establishes that she was disabled prior to the ALJ's decision on April 21, 2005. (Jt. Stip. at 17). However, none of the medical documents provide a retroactive diagnosis. (See AR 687, 691, 696). Instead, the documents focus on the pending physical problems Plaintiff was experiencing. As such, the Appeals Council's interpretation that the medical documents provided did not apply to the period on or before April 21, 2005 was reasonable. See Andrews, 53 F.3d at 1039-40.

The Appeals Council also considered Plaintiff's declaration and Geraldine Smith's declaration. (AR 10). Plaintiff's declaration merely informed the Appeals Council that she was no longer employed and offered her opinion of why she was fired. (See AR 674). Geraldine Smith's declaration was not particularly compelling as she stated that she only saw Plaintiff once a month and was largely cumulative of Plaintiff's testimony. (Compare AR 739, 744-72 with AR 677-78). As such, the declarations did not have much probative value.

In sum, the Appeals Council's adequately reviewed the post-hearing evidence described above. The Agency's determination that Plaintiff was not disabled on or before April 21, 2005 is supported by substantial evidence. Accordingly, Plaintiff's claim does not warrant remand.

**B.   Plaintiff's Claim That The ALJ Did Not Properly Consider Dr. Farinacci's Opinion Does Not Warrant Remand**

Plaintiff argues that the ALJ failed to give specific and legitimate reasons for rejecting treating physician Dr. Farinacci's

"Mental Assessment" check-off report. (Jt. Stip. at 9-11). The Court disagrees.

Dr. Farinacci's opinions were contradicted by the assessments of Dr. Krieg and Dr. Parikh. Specifically, Dr. Farinacci opined that Plaintiff was unable to complete complex tasks. (AR 410). Dr. Krieg, after performing several psychological tests and assessments, found that Plaintiff was capable of performing complex tasks. (AR 505). Also, Dr. Parikh determined that Plaintiff could follow complex instructions and could respond appropriately to the usual work settings in such matters as attendance and adjusting to changes in the work routine. (AR 427). Dr. Farinacci assessed that Plaintiff's ability to complete a normal work-day and work-week would be seriously affected by her mental impairments. (AR 410). She also found that Plaintiff's mental impairments would seriously affect Plaintiff's ability to carry out detailed instructions. (Id.). As Dr. Farinacci's assessment is contradicted by the opinions of Drs. Parikh and Krieg, the ALJ was required to give specific and legitimate reasons for rejecting Dr. Farinacci's reports. See Orn, 495 F.3d at 633 (quoting Reddick, 157 F.3d at 725).

The Court concludes that the ALJ's reasons for rejecting Dr. Farinacci's assessment were specific and legitimate. ALJ observed that Dr. Farinacci's assessment did not cite any testing or objective medical findings indicating that Plaintiff has an attention disorder, that she is disorganized, or has difficulty performing tasks. (AR 27). The Commissioner need not accept any opinion, even a treating physician's, if that opinion is brief, conclusory, and inadequately supported by

clinical findings.  <u>See</u> <u>Batson v. Comm'r of Soc. Sec.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004) (rejecting a treating physician's opinion, in part, because it was "conclusory in the form of a check list" and "lack[ed] substantive medical findings to support [the] conclusion."); <u>Tonapetyan v. Comm'r of Soc. Sec.</u>, 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole).

Dr. Farinacci's assessment appears to be internally inconsistent – finding severe functional limitations but requiring only conservative treatment.  The ALJ noted that although Dr. Farinacci rated Plaintiff's limitations as seriously affecting Plaintiff's ability to function, Plaintiff's treatment was not aggressive nor did she require hospitalizations.  (AR 27).  As such, Plaintiff's lack of aggressive treatment was a specific and legitimate reason for rejecting Dr. Farinacci's opinion.  <u>See</u> <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1433 (9th Cir. 1995) (holding ALJ properly rejected uncontradicted opinion of treating physician that claimant was totally disabled where physician also opined that claimant needed only "program of conservative care").

In addition, the ALJ reasoned that Dr. Faranicci's opinions on Plaintiff's functional limitations were not consistent with her acknowledged daily activities.  (AR 27).  At the time of Dr. Farinacci's assessment, Plaintiff was employed full-time caring for children, ages eight and ten years old, and doing housework.  (AR 742).  The ALJ noted that Plaintiff also reported that she had recently been employed caring for three year old triplets.  (AR 28).  The Court agrees that Plaintiff's extensive daily activities are not consistent with Dr.

Farinacci's very restrictive assessment of Plaintiff's functional limitations.

Moreover, Dr. Farinacci's assessment indicates that Plaintiff was able to control drinking and use of drugs. (AR 413). This statement contradicts Plaintiff's testimony regarding her drug use. (AR 773-76). Plaintiff admitted in her testimony that she continued to use drugs through 2002. (AR 774). Also, several other examiners have noted that Plaintiff has a history of drug and alcohol abuse. (See, e.g.,AR 424, 569). As such, Dr. Farinacci appears to be unaware of a significant factor in Plaintiff's history, i.e., Plaintiff's serious problems with alcohol, cocaine, and amphetamine abuse.

In sum, the ALJ provided specific and legitimate reasons for rejecting the opinion of Dr. Farinacci. Accordingly, Plaintiff's claim does not warrant remand.

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: February 14, 2008

                    /s/

                    SUZANNE H. SEGAL
                    UNITED STATES MAGISTRATE JUDGE

21